JOURNAL ENTRY and OPINION
Defendant-appellant herein, Anthony Thurman, appeals from the trial court's denial of his motion to suppress evidence as well as his convictions on six counts, subsequent to a jury trial, including one count of carrying a concealed weapon, one count of having a weapon while under a disability (with a firearm specification), one count of possession of drugs (with a firearm specification), one count of preparation of drugs for sale (with a schoolyard specification and a firearm specification), one count of possession of criminal tools and one count of possession of drugs. Because we find that the trial court did not err in denying the motion to suppress and because we further find that the jury's verdict was supported by the weight of the evidence admitted at trial, we affirm.
The appellant was initially arrested while sitting in a parked car in the vicinity of East 125th and Woodside Avenue at 2:00 A.M. The two arresting officers were on routine foot patrol in the area on the evening of the arrest. The officers testified that they conducted the walk through the neighborhood in response to numerous complaints of public drinking, drinking by minors and drug activity in the neighborhood.
Upon encountering the appellant's vehicle, the first officer became suspicious because the occupants were sitting in a parked vehicle for no apparent reason. The officer, believing that the occupants might be drinking in the vehicle, approached the driver's side window and shined a flashlight into the interior. At this juncture the officer observed the butt of a firearm protruding between the driver's leg and the center console. The appellant was seated in the driver's seat of the vehicle. The first officer then yelled to the second officer, who was on the other side of the street, for assistance.
The two officers then proceeded to remove the occupants from the car. After the appellant and the passenger were removed and secured, a gun was recovered from the car and the appellant and the other passenger were placed under arrest.
Subsequent to arresting the appellant and the other passenger, the officers conducted an inventory search of the vehicle. During the course of this search the officers discovered a large amount of crack cocaine in the glove compartment which had not yet been cut up in preparation for sale. When the officers removed a loose piece of plastic from the center console, they found two additional large bags of crack cocaine which had been cut up in preparation for sale. The inventory search of the car also uncovered a vial of liquid PCP.
Prior to trial, the appellant filed a motion to suppress in which he challenged the propriety of the police search which led to his arrest. The motion essentially contended that the officers lacked probable cause for the search and that it was not possible that the first officer would have been able to see the rear butt of the appellant's pistol protruding between the driver's seat and the center console because of the appellant's considerable girth. The trial court denied the motion subsequent to an evidentiary hearing.
At trial, the appellant again questioned the officers' version of events as being inconsistent and unbelievable. The appellant also denied knowledge of the presence of the firearm and the narcotics found in the vehicle and suggested that they belonged to the vehicle's owner, who was not present at the time of the incident in question. The jury found appellant guilty on all counts, but did not find as to the possession of drugs count, that the volume of controlled substance was in an amount greater than one times bulk, but less than five times bulk.
The trial court sentenced appellant to one year at the Lorain Correctional Institution on the carrying a concealed weapon count, two years on the having a weapon while under a disability count, ten years on the first possession of drugs count with one additional year for the firearm specification and two additional years on the major drug offender specification, two years on the preparation of drugs for sale count, one year on the possession of criminal tools count and one year on the second possession of drugs count. The trial court ordered that all of the sentences be served concurrently.
The appellant timely filed the within appeal from the verdict of the trial court. The appellant's first assignment of error states:
 I. THE COURT ERRED WHEN IT DENIED THE MOTION TO SUPPRESS AND FOR THE RETURN OF THE ILLEGALLY SEIZED PROPERTY.
The appellant asserts repeatedly in this assignment of error that the trial court erred by overruling the motion to suppress because it should have been obvious that the police were fabricating testimony. In a suppression hearing, the evaluation of the evidence and the credibility of witnesses are issues for the trier of fact. State v. Mills (1992),62 Ohio St.3d 357; State v. McCulley(Apr. 28, 1994), Cuyahoga App. No. 64470, unreported. The trial court assumes the role of trier of fact in a suppression hearing and is therefore in the best position to resolve questions of fact and evaluate credibility of witnesses. State v. Klein (1991), 73 Ohio App.3d 486. Appellate courts should give great deference to the judgment of the trier of fact. State v. George (1989),45 Ohio St.3d 329. Accordingly, an appellate court is bound to accept the trial court's findings of fact if they are supported by competent, credible evidence. Klein, supra.
The Fourth Amendment to the United States Constitution provides in part: the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated ***. The Fourth Amendment and Article One, Section 14 of the Ohio Constitution require the police to obtain a warrant based upon probable cause before they conduct a search. However, the warrant requirement is subject to a number of well-established exceptions. Coolidge v. New Hampshire (1971), 403 U.S. 443, 91 S.Ct. 2022.
Although we do not doubt that appellant's attorney believed his client's version of events over that of the police officers, it was for the finder of fact to determine the credibility of the witnesses and accord each the proper weight. The trial court obviously believed that the first officer did in fact encounter the vehicle containing the appellant in the manner that he described. Accordingly, we do not find that the trial court abused its discretion in denying the motion to suppress.
We agree with the trial court that the first officer's observation of the handgun sticking out from between the driver's seat and the center console should not be characterized as a "search" but an open observation of an area within the curtilage. California v. Ciraolo (1986),476 U.S. 207, 213, 90 L.Ed.2d 210, 106 S.Ct. 1809. What a person knowingly exposes to the public, even in his own home or office, is not a subject of Fourth Amendment protection. Katz v. United States (1976),389 U.S. 347, 19 L.Ed.2d 576, 88 S.Ct. 507.
Objects falling in the plain view of an officer who has a right to be in the position to have the view are subject to seizure. Harris v. United States (1968), 390 U.S. 234, 19 L.Ed.2d 1067, 88 S.Ct. 992. The officer in this case certainly had a right to be positioned where he was standing at the moment that he observed the handgun. The use of a flashlight during the evening hours does not change our analysis of whether the firearm was in plain view. State v. Lang (1996), 117 Ohio App.3d 29.
In State v. Lang (1996), 117 Ohio App.3d 29, 34-35, the court discussed the plain view doctrine as it relates to those instances where an officer observes evidence of a crime in an open field or similarly non-protected area, including the interior of a vehicle:
 *** By comparison, the concern here is with plain view in a quite different sense, namely, as descriptive of a situation in which there has been no search at all in the Fourth Amendment sense. This situation, which perhaps is deserving of a different label so as to avoid confusion of it with that discussed in Coolidge, encompasses those circumstances in which an observation is made by a police officer without a prior physical intrusion into a constitutionally protected area. This includes the case in which an officer discovers an object which has been left in an `open field' or similar nonprotected area, and also those cases in which an officer — again, without making a prior physical intrusion — sees an object on the person of an individual, within premises, or within a vehicle. In each of these instances there has been no search at all because of the plain view character of the situation, and this means that the observation is lawful without the necessity of establishing either pre-existing probable cause or the existence of a search warrant or one of the traditional exceptions to the warrant requirement. It is extremely important to understand that the kind of plain view described in the preceding paragraph, because it involves no intrusion covered by the Fourth Amendment, need not meet the three requirements set out in the Coolidge plurality opinion.
 By definition, there is no prior valid intrusion. Whether it is immediately apparent that what has been observed is evidence of crime may have a bearing upon what the police may do as a result of this nonsearch observation, but it is clearly irrelevant to the threshold issue of whether the observation was a search." (Footnotes omitted and emphasis added.) 1 LaFave, Search and Seizure (2 Ed. 1987) 321-322, Section 2.2(a). Citing State v. Claytor (1993), 85 Ohio App.3d 632-633.
***
 *** Thus, observation of contraband in a vehicle on a public street without physical intrusion does not constitute a search. State v. Butler (May 23, 1996), Cuyahoga App. No. 68581, unreported. Accord Arizona v. Hicks(1987), 480 U.S. 321, 107 S.Ct. 1149, 94 L.Ed.2d 347; Texas v. Brown (1983), 460 U.S. 730, 103 S.Ct. 1535, 75 L.Ed.2d 502; State v. Copper, supra; State v. Snyder (Aug. 25, 1995), 1995 Ohio App. LEXIS 3430, Wood App. No. WD-94-098, unreported; State v. Harris, supra; State v. Claytor, supra; State v. Isaac (May 21, 1980), Hamilton App. No. C-790500, unreported. Further, the fact that Sergeant Luck used a flashlight to better see into Lang's automobile "trenched upon no right secured * * * by the Fourth Amendment." Texas v. Brown, supra at 738, 103 S.Ct. at 1541. (Emphasis sic.)
As was the case in Lang, the appellant herein was also sitting in a vehicle on a public street at the time that the firearm was observed next to his person. This observation by the officer did not constitute a search either of the vehicle in question or of the appellant's person.
Accordingly, as we conclude that the encounter in the case sub judice involved no intrusion covered by the Fourth Amendment, the appellant's first assignment of error is overruled.
The appellant's second assignment of error states:
 II. THE COURT ERRED WHEN IT REFUSED TO ALLOW THE DEFENSE TO DEMONSTRATE, USING THE EXACT SAME CAR, THAT THERE WAS NO WAY THE OFFICER COULD SEE, AS HE SAID HE DID, THE GUN WEDGED BETWEEN THE CONSOLE AND THE DRIVER'S SEAT, OR EVEN THE CONSOLE ITSELF, WHILE THE DEFENDANT WAS SEATED IN THE CAR.
The admission or exclusion of relevant evidence rests within the sound discretion of the trial court." State v. Jackson (2001), 92 Ohio St.3d 436,444, 751 N.E.2d 946; State v. Sage (1987), 31 Ohio St.3d 173,510 N.E.2d 343, paragraph two of the syllabus.
In the instant matter it would have been far more speculative than probative for the jury to have gone on a jury view for the purpose of determining whether a handgun wedged between a console and a driver's seat is observable to a person standing outside of the car. It is clearly within the experience and knowledge of the average juror to make such a determination without the benefit of a jury view. Several pictures of the vehicle, depicting both its interior and exterior, as well as the appellant sitting in the car, were admitted into evidence. The jury also heard testimony on this issue and saw the appellant firsthand during the duration of the trial.
To suggest that it was not possible for the officer to have viewed the gun and/or the center console from his vantage point due to the girth of the appellant defies common sense. Nonetheless, the appellant was free to make this argument to the jury. The trial court had no corresponding duty to grant the appellant's request, especially in light of the fact that the issue had already been raised during the course of the suppression hearing. Accordingly, this assignment of error is overruled.
The appellant's third assignment of error states:
 III. THE COURT ERRED IN ALLOWING THE STATE, UNDER THE GUISE OF REBUTTAL TO SHOW THE JURY (A) THE DEFENDANT HAD BEEN ARRESTED BY DETECTIVE JONES ON MARCH 4 OF 1999 AND MARCH 25 OF 2000" FOR MATTERS NOT RELATED TO THE CHARGES IN THIS CASE; AND (B) TO REBUT THE DEFENDANT'S TESTIMONY THAT DETECTIVE JONES HAD NOT BOOKED HIM ON THE CHARGES IN THAT CASE.
On direct examination the appellant testified that Detective Jones (who was not one of the two officers initially at the scene of the arrest) had engaged in a pattern of conduct wherein he repeatedly harassed the appellant. The appellant further testified that the last of these such incidents occurred in 1995. This testimony clearly gave the impression that the appellant had managed to avoid the scrutiny of Detective Jones, who is a neighborhood liaison with the Cleveland Police Department, during the intermittent time period between 1995 and the trial. As Detective Jones' testimony indicated, this was not the case. In his testimony Detective Jones stated that he had arrested the appellant on March 4, 1999 and March 25, 2000. Such testimony is properly introduced as rebuttal evidence.
Rebuttal evidence is that which is given to explain, refute, counteract, or disprove facts given in evidence by the adverse party. State v. McNeill (1988) 83 Ohio St.3d 438, 446, 700 N.E.2d 596; Nickey v. Brown (1982), 7 Ohio App.3d 32, 35, 454 N.E.2d 177. Rebuttal evidence becomes relevant only to challenge the evidence offered by the adverse party, and such evidence is thus limited in its scope. Id. The admission or exclusion of rebuttal testimony is within the discretion of the trial court and will not be reversed absent an abuse of discretion. State v. McNeill, 83 Ohio St.3d at 446.
The rebuttal testimony at issue here was necessary to refute and/or disprove testimony voluntarily put into evidence by the appellant on direct examination. The trial court limited the rebuttal testimony to its proper scope of refuting evidence offered by the appellant.
Based on the foregoing, we cannot conclude that the trial court abused its discretion in permitting the rebuttal testimony of Detective Jones. The appellant's third assignment of error is overruled.
The appellant's fourth and final assignment of error states:
 IV. GIVEN THAT THE EVIDENCE ON ALL COUNTS WAS INSUFFICIENT TO SUPPORT A FINDING OF GUILT, THE COURT ERRED WHEN IT DENIED THE DEFENDANT'S MOTION FOR JUDGMENT OF ACQUITTAL MADE AT THE CLOSE OF ALL THE EVIDENCE.
The relevant inquiry, in reviewing a record for sufficiency, is whether "after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." State v. Jenks (1991), 61 Ohio St.3d 259, 574 N.E.2d 492, paragraph two of the syllabus, following Jackson v. Virginia (1979), 443 U.S. 307,99 S.Ct. 2781, 61 L.Ed.2d 560.
After a careful review of the entire record, we conclude that there was sufficient evidence introduced at trial to sustain the appellant's convictions.
Ample evidence was introduced to establish constructive possession of the narcotics in question by the appellant. In State v. Wilson (July 5, 2001), Cuyahoga App. No. 78344, unreported, this court recently outlined the elements of constructive possession:
 Possession may be actual or constructive. State v. McShan(1991), 77 Ohio App.3d 781, 603 N.E.2d 1076. To establish constructive possession, the evidence must prove that the defendant was able to exercise dominion and control over the contraband. State v. Wolery (1976), 46 Ohio St.2d 316, 332, 348 N.E.2d 351. Circumstantial evidence that the accused was located in very close proximity to readily usable drugs may constitute constructive possession. State v. Barr (1993), 86 Ohio App.3d 227, 235, 620 N.E.2d 242; State v. Burston, 1994 Ohio App. LEXIS 1930 (May 5, 1994), Cuyahoga App. No. 65128, unreported.
The appellant herein was situated in close proximity to large quantities of drugs, both readily usable and in non-cut form. The appellant failed to state any credible reason that he happened to be seated in the driver's seat of a car with such a large quantity of drugs located in the glove compartment and the center console. Although the appellant did not own the car in question, he was in control of the car during the entire relevant time period. No evidence suggesting that the title owner of the automobile was responsible for placing the drugs and the handgun in the vehicle was ever introduced. Although the appellant denied that he was in possession of the drugs or the firearm on the evening in question, the jury, as was its province, chose to disbelieve this testimony.
As there was competent and credible evidence introduced going to each essential element of the crimes with which the appellant was charged, the trial court properly permitted the determination of guilt or innocence to be made by the jury.
Accordingly, we hereby find that this assignment of error is without merit.
It is ordered that appellee recover of appellant its costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the Common Pleas Court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
FRANK D. CELEBREZZE, JR., J., and COLLEEN CONWAY COONEY, J., CONCUR.